IN THE MATTER OF THE ＿ETITION OF GEORGE W. MEAD
TO REDUCE AN ASSESSMENT.

The provision of the amendment of 1875 to the charter of the city of Brook-
    lyn (§ 13, chap. 633, Laws of 1875), which prohibits the courts from
    vacating or reducing any assessment for a local improvement in said city,
    otherwise than to reduce it to the extent it has been increased by fraud
    or irregularity, and prohibiting in any event the disturbance of that pro-
    portion of an assessment which is equivalent to the fair value of the
    improvement, only permits the reduction of an assessment upon petition
    in case of fraud or irregularity, to the extent it has been increased thereby,
    beyond the fair value of the work.
Until, therefore, it is made to appear as matter of fact, that an assessment
    exceeds the fair value of the work, the court has no power to grant any
    relief, and this must be affirmatively alleged by the petitioner, and estab-
    lished by common-law evidence.
The effect of said provision is to repeal the provision of the act of 1861
    (§ 5, chap. 169, Laws of 1861), which prohibited an assessment to an
    amount exceeding one-half the value of the property assessed.
The provision of the State Constitution (art. 8, § 9) authorizing the Legisla-
    ture to restrict cities in their power of taxation and assessment, and to
    correct abuses in assessments, does not prevent the Legislature from
    restricting, by provision in a city charter, the power of the courts to
    disturb assessments.
The said provision of the act of 1875 is not, therefore, violative of said
    constitutional provision.
It is within the discretion of the General Term, upon the reversal of an
    order modifying an assessment for a local improvement, whether to
    grant a new trial, or to direct a dismissal of the petition, and award
    judgment absolute against the petitioner.

(Argued June 11, 1878; decided June 21, 1878.)

APPEAL from order of the General Term of the Supreme
Court, in the second judicial department, reversing an order
of Special Term reducing an assessment upon certain lots in
the city of Brooklyn belonging to the petitioner; the order
appealed from also dismissed the petition, with costs.
(Reported below, 13 Hun, 349.)

The assessment in question was for grading and paving a
portion of Seventeenth street in said city. The lots of the
petitioner were assessed at $243.18 each. The value, as esti-

mated by the assessor, was $100 each, and the ground of the application was that the assessors had no authority to assess the lots to more than one-half their value. The order of Special Term reduced the assessment to fifty dollars on each lot.

*John J. Townsend*, for appellant. · The violation by a corporation of a restriction imposed in obedience to the Constitution upon its power of taxation cannot be permitted. (*State R. R. Tax Cases*, 92 U. S. R., 615.) The assessment could only be reduced to the extent it had been increased by reason of fraud. (*In re P. E. Meth. Ch.*, 66 N. Y., 397.) It was error to award judgment absolute against the petitioner. (Laws 1854, chap. 270, § 2; 4 Edms. Stat., 681; Code Civil Procedure, 1317, 1356, 1361; *Edmonston* v. *McLoud*, 16 N. Y., 543; *Griffin* v. *Marquardt*, 17 id., 28; *Stowell* v. *Hazlett*, 57 id., 637; *Hall* v. *Erwin*, id., 643; *Foot* v. *Ætna Ins. Co.*, 61 id., 571.)

*William C. De Witt*, for respondent. The Legislature has power to defend or confirm void or irregular assessments, and to ratify that which was invalid. (*Leman* v. *Mayor, etc., of New York*, 55 N. Y., 365, 366; *Matter of Ferdinand Mayer*, 50 id., 505; *In re Van Antwerp*, 56 id., 261; *Matter of Parquet*, 67 id., 441; *Howell* v. *City of Buffalo*, 37 id., 267; *Brewster* v. *Syracuse*, 19 id., 116; *Sun Mutual Ins. Co.* v. *New York*, 8 id., 251; *Brown* v. *Mayor*, 63 id., 243, 244.) Where a party seeks a statutory remedy, he must bring himself clearly within all the provisions of the statute by affirmative common law proof, and the record must show that the statute has been strictly pursued. (*Smith* v. *Moffatt*, 1 Barb., 65, 67; *Farrington* v. *Morgan*, 20 Wend., 207; *Hill* v. *Stocking*, 6 Hill, 314; *People* v. *Matthews*, 38 N. Y., 4, 51; *Wiggin* v. *Woodruff*, 16 Barb., 474.) It was competent for the Legislature to enact the limitation section of the act of 1875, in an act, entitled "an act to amend the charter of the city of Brooklyn." (*People ex rel. City of*

*Rochester* v. *Briggs,* 50 N. Y., 553; *Brewster* v. *Syracuse,* 19 id., 116; Laws 1862, chap. 205, § 43; Laws 1873, p. 1373, § 38; Laws 1875, p. 798.)

Miller, J.  The Special Term, in this case, upon the application of the petitioner, reduced the assessment on each lot for which he was assessed to the sum of fifty dollars, which was one-half of the value thereof as estimated by the assessors. This was apparently done in pursuance of the provisions of section 6 of chapter 169 of the Session Laws of 1861.  The General Term reversed the Special Term order, upon the ground that the statutory remedy against a void or voidable assessment for local improvements in the city of Brooklyn is confined by section 13, title 12 of chapter 633 of the Session Laws of 1875 to that portion of any such assessments which is in excess of the fair value of the work actually done and materials furnished, and which is the result of fraud or extravagance.

The summary remedy by petition for relief from an assessment is a statutory one, and is therefore independent of any relief to which a party may be entitled by an equitable action or by a *certiorari* to review the proceedings in the Supreme Court.  The first authority on the subject, as to the city of Brooklyn, is given by section 43, chapter 63 of the Laws of 1862, by which the provisions of an act in relation to frauds in assessments for local improvements in the city of New York (section 2, chapter 338, Laws of 1858), are extended and made applicable to the city of Brooklyn. This was modified by chapter 438, Laws of 1871, and again by chapter 863, section 38, Laws of 1873.  The last act provides a remedy against " any irregularity or fraud " whereby the expense of any local improvement has been unlawfully increased, and confers authority upon the court " to reduce the assessment, by as much as it shall have been increased by such fraud or irregularity."  Then follows the amendment of the charter of the city of Brooklyn, chapter 633 of Session Laws of 1875, which is as follows : " None

of the provisions of any act of the Legislature of the State shall enable or permit any court to vacate or reduce any assessment in fact, or apparent, whether void or voidable, on any property, for any local improvement in the city of Brooklyn, otherwise than to reduce any such assessment to the extent the same may have been in fact increased in dollars or cents by reason of fraud or irregularity, and in no event shall that proportion of any such assessment, which is equivalent to the fair value of any actual local improvement be thereby disturbed." As this is the last statute which has been enacted by the Legislature relating to the remedy by petition against fraud or irregularity in assessments, it must, I think, be considered as superseding, and by implication repealing, any and all prior enactments which are inconsistent or in conflict with the same. The act of 1861 provided that no assessment should exceed in amount one-half of the value of the land assessed. This is changed by the act of 1875; and the only subject upon which the court can pass in a proceeding by petition is the excess over the fair value of the work, as provided by the last named act. There is, therefore, no ground for holding that the amount of the assessment in excess of the limitation of the act of 1861 is to be considered and made a sufficient ground for reducing the assessments to one-half of the value of the land.

We are then brought to consider what construction is to be placed upon the section cited. It expressly declares that no previous legislation shall authorize a reduction of any assessment, except to the extent which it may have been increased by reason of fraud or irregularity. It thus indicates that the purpose in view was to furnish protection against fraud and irregularity, and that it was aimed at these alone and thereby intended that the deduction should only be such amount as was occasioned thereby. The further provision, which constitutes the vital part of the enactment, that the proportion which constitutes the fair value shall not be disturbed, is in accordance and consistent with the previous part of the section, and means the fair value of the improvement actu-

ally made.  If the excess was far beyond the fair value, or if, by fraud and recklessness, the amount had been increased so as to exceed such value, the remedy was open under the statute.  It is not difficult to see how a lavish expenditure of money, by paying extravagant prices for materials and work, might increase the cost of the improvement far beyond its actual value, and thus show fraud on the part of the city authorities or their agents.  Against this the act was aimed and the remedy was provided.  I think it did not mean that it should not exceed the value of the land, for while that might be comparatively worthless and trifling, it is obvious that it might be largely increased by a local improvement. Practical experience in large cities demonstrates that lots which from their location are inaccessible or unavailable, for any purpose, by reason of being far below the level of the land which surrounds them, or remote from an open public thoroughfare, are often increased very much in value by the opening of a street or by some other useful improvement, and it may well have been the case that the interest of the owners of the lots in question was substantially promoted by a large expenditure of money to make the necessary change, and that they thereby became available for use and correspondingly valuable.  So long as the assessed party received an equivalent, the intention evidently was that the assessment should not be disturbed, whether it was strictly irregular or otherwise, or even if fraud was shown, except to the extent provided by the statute last cited.

There is no merit in the point taken that the last clause in the section cited was improperly included in the charter. This objection is based upon the ground that it is a violation of the Constitution to incorporate in the charter a measure which affects all remedies against the abuses of the charter. We think it was within the power of the Legislature to make the enactment cited, and that it is not in conflict with the provision of the Constitution, relied upon by the appellant's counsel, which confers authority upon that body to provide for the organization of cities ; to restrict their power of taxa-

tion and assessment; and to prevent abuses in assessments. (Art. 8, § 9, of the Constitution.) It relates to the subject of assessments and abuses arising out of the same, and as every presumption is to be indulged in favor of the validity of legislative acts, they must be upheld, unless there is a substantial departure from the organic law. Such is not the case in the provision cited; and we are unable to discover any sufficient reason why the Legislature may not restrict the power of the courts to disturb assessments when made by a provision in a city charter. But even if the Legislature exceeded their powers in limiting the remedy by a charter act, it had no authority to grant relief in the same manner, and the petitioner has no standing in court. He cannot seek relief by petition, under the charter, and at the same time repudiate the very enactment which provides the remedy. The whole enactment is connected together, and so framed, that if a part is invalid, the whole must fall.

The principle upon which a corporation tax for the improvement of real estate is founded is quite familiar and well understood. It is based upon the theory that the owner of the property assessed is to receive a benefit corresponding with the amount assessed, and that this is to be paid to meet the cost and expense of the improvement. It is, therefore, of no consequence what the value of the lots may be, provided the enhanced benefit is equal to the assessment. It is not made apparent from the record before us that there has been any departure from this principle, so as to affect the assessment within the enactment in question. Nor is there any ambiguity in the provision cited which indicates a departure from this doctrine.

The limitation in the act in question was no doubt designed to prevent assessments from being vacated entirely by reason of technical defects alone; and when for any cause or reason a lawful deduction was demanded, that it should be only to such an extent as was equitable and just, leaving the property which had been improved to pay for the fair value of the work done and materials furnished, but discharging it from

such as might be the result of fraud and extravagance. This is eminently practical, as well as fair and just, and leads to a disposition of assessment cases solely upon their real merits. The statute which authorizes an application for relief against void or voidable assessments confines the remedy in the case at bar, to such portion of the assessments which are in excess of the fair value of the work; and until it is made to appear, as a matter of fact, that there was such excess, the court has no power to grant any relief. This being the only legitimate subject-matter of the remedy, the petitioner was, I think, bound to set forth and prove that such excess actually existed. This should be established by affirmative common law evidence. The record must show distinctly a case within the statute, and it is only available to reduce assessments which are void or voidable, the amounts to which they have been increased by reason of fraud or of irregularity, and the sums which the irregular or fraudulent assessments may exceed the fair value of the improvement. It is the excessive element which constitutes the essence and the very foundation of the remedy. Until this excess is shown, no case is made to appear within the provision contained in the statute. The burden of proof was therefore upon the petitioner; and the party who alleges error must establish that such is the fact, within the meaning and the intent of the statute. The provision of the statute which we are called upon to interpret is not in the nature of an exception to a prior statute, where the defendant must show that he comes within the exception, but is in the nature of a new enactment, amending a law which had previously existed. It stands as another and different provision, which can only be made available by conforming to its require-ments. The case of the *Second Avenue M. E. Church* (66 N. Y., 395) is not adverse to the views enunciated.

It is urged that it was error to award judgment absolute against the petitioner. The order made at General Term was for a reversal and a dismissal of the petition. The proceed-ing is a summary one and does not stand exactly in the same

position as an appeal from a judgment. Be that as it may, however, it was at least discretionary with the court to grant a new trial and it cannot be said that such discretion was abused by the order made. The petition was also radically defective. A new trial would have been of no benefit without some additional allegations, and as it stood, additional facts could not properly have been proved. If a new presentation of the case was desired, the counsel for the petitioner should have asked for leave to file a new petition, containing all necessary allegations, to obtain the proper relief. This was not done, and there is no ground of complaint, under the circumstances, at the disposition made of the case. We think that the petitioner should be allowed to make a new application and in this aspect of the case, the order must be affirmed with costs, without prejudice to a renewal of the application by the petitioner.

All concur, except RAPALLO, J., absent.

Judgment affirmed.