(77 Misc. Rep. 532.)

PEOPLE ex rel. KELLER et al. v. CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. September, 1912.)

1. MUNICIPAL CORPORATIONS (§ 414*)—STREETS—"REPAVEMENT."
    Where a street has been paved for a part of its width, subsequent pavement of those parts which have never been paved is not a "repavement," as affecting liability for the expense of an improvement.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1008, 1017; Dec. Dig. § 414.*
    For other definitions, see Words and Phrases, vol. 7, p. 6102.]

2. MUNICIPAL CORPORATIONS (§ 414*)—STREETS—PAVEMENT—"REPAIRING"—"REPAVING."
    "Repairing" a pavement means restoration of the paved surface, while "repaving" means replacement of old pavement with new.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1008, 1017; Dec. Dig. § 414.*
    For other definitions, see Words and Phrases, vol. 7, pp. 6096–6102; vol. 8, p. 7785.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MUNICIPAL CORPORATIONS (§ 460*)—STREETS—IMPROVEMENT—REMOVAL OF LAMP POSTS AND HYDRANTS.

A street paving assessment properly includes items of cost for removing lamp posts and hydrants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1102–1104; Dec. Dig. § 460.*]

4. MUNICIPAL CORPORATIONS (§ 460*)—STREETS—IMPROVEMENT ASSESSMENTS —IRREGULARITIES—MATERIALITY.

A meritorious local improvement assessment should not be set aside on account of any improper inclusion of relatively small items of cost.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1102–1104; Dec. Dig. § 460.*]

Certiorari by the People, on the relation of Charles Keller and another, against the City of Buffalo to review a local assessment for paving, etc., a part of a street. On motion for judgment on writ and return. Motion overruled.

Frank M. Spitzmiller, of Buffalo, for the motion.
Herbert A. Hickman, of Buffalo, opposed.

POUND, J. Relator raises by this motion certain questions as to the legality of the assessment to pay the cost of the proposed improvement, to be decided on the undisputed facts.

[1] First. It is urged that, the street having once been paved, the proposed improvement is a repavement, although the new pavement is to be five feet wider on each side than the old paved portion of the street. If the relator is correct in this contention, one-third of the entire expense of the improvement must be met by general taxation; but, if the contention of the city prevails that the improvement is a repavement only to the width of the old pavement, the expense of the strips of new pavement on either side of the old roadway must be paid by local assessment on the property benefited and the assessment is properly so laid. City Charter, §§ 279, 400. No case is cited which holds that, where a street has been paved part of its width, the subsequent pavement of those parts where no pavement has ever been laid is a repavement, and the question is a novel one. Matter of Grube, 81 N. Y. 139, 141, where the Burmeister Case, 76 N. Y. 174, and the Garvey Case, 77 N. Y. 523, cited by relator, are explained and distinguished, indicates that it is only the relaying of the old pavement that can be termed a repavement. Matter of Astor, 53 N. Y. 617, cited by relator, does not touch the question. Although Ten Eyck v. Rector, 65 Hun, 194, 20 N. Y. Supp. 157, contains some loose expressions, defining paving and repaving, which might uphold relator's contention that "paving" means when pavement is laid for the first time in a dirt road and that any subsequent paving thereof is "repaving," it decided merely that an agreement between landlord and tenant, whereby the latter is to pay all assessments for paving, is broad enough to include assessments for repaving.

[2] The charter (section 279) recognizes (a) repair of paved streets by the commissioner of public works, and (b) repaving, when the commissioner certifies that it is not expedient to make further repairs.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Repairing" means restoration of the paved surface. "Repaving" means paving again, taking up the old pavement and replacing it with new. To the extent that the new pavement extends beyond the lines of the old, the street is not repaved, but is paved for the first time. If a street is paved for one-half its width by local assessment, and later the pavement is extended to the entire width of the street without disturbing the first pavement, probably no one would claim that the new pavement was a repavement. The circumstance that the old pavement is relaid at the same time that the new pavement is laid does not make the work one of repaving. The purpose of the charter is, it would seem, to impose the entire original cost of new pavement on the property benefited, and to charge the city at large with one-third of the expense of replacing the old pavement when it becomes worn out.

[3] Second. It is urged that the assessment is erroneous because it includes an item of $70 for moving lamp posts and an item of $520 for moving hydrants. The work of moving lamp posts and hydrants is necessary in connection with widening the pavement. If it were not done, the lamp posts and hydrants would obstruct the new pavement. While it is not included in the plans and specifications nor in the contract, it is work which the commissioner of public works might do, if authorized thereto by the common council. City Charter, §§ 271, 272, Title X. When the common council ordered the improvement without other provision for this work, it, by reasonable implication, authorized the commissioner of public works to set back the lamp posts and hydrants. When it ordered the expense to be included in the assessment, it provided for the payment thereof pursuant to section 272 of the charter. Section 279 of the charter authorizes the commissioner "to lay water pipes" without advertising for proposals to do the work, although the expense may exceed $500, and moving the hydrants comes fairly within the meaning of the term "to lay water pipes."

[4] The contract for repaving and paving was let for $23,850, and the above items are relatively so small that the court "should not be astute to find some means of setting aside what so far as the evidence shows is a meritorious assessment levied for the payment of the cost of a public improvement." Gilmore v. City of Utica, 131 N. Y. 26, 34, 29 N. E. 841, 843.

Motion denied, and trial ordered to proceed forthwith.